IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ARTHUR FAMULINER,<br>o/b/o himself and others similarly<br>situated, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>WALMART INC., et al.,<br><br>Defendants. | Case No. 19-00060-CV-W-ODS |

<u>ORDER AND OPINION (1) GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, (2) GRANTING
PLAINTIFFS' APPLICATION FOR INCENTIVE AWARDS FOR CLASS
REPRESENTATIVES AND FOR AWARD OF ATTORNEYS' FEES AND EXPENSES,
AND (3) DISMISSING MATTER WITH PREJUDICE</u>

Pending is Plaintiffs' unopposed motion for final approval of proposed class action settlement (Doc. #36) and Plaintiffs' application for incentive awards for class representatives and for award of attorneys' fees and expenses (Doc. #28). For the following reasons, both motions are granted.

## I. BACKGROUND

In December 2018, Plaintiffs Arthur Famuliner and Russ Mapes, individually and purportedly on behalf of others similarly situated, filed a lawsuit in the Circuit Court of Cass County, Missouri against Defendants Walmart Inc. and Warren Distribution, Inc. Doc. #1-1. In January 2019, Defendants removed the matter to this Court. Doc. #1. Plaintiffs allege claims under the Missouri Merchandising Practices Act and also bring claims of breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraud, negligent misrepresentation, and unjust enrichment arising out of the alleged purchase and use of Super Tech 303 Tractor Hydraulic & Transmission Oil from Walmart stores in Missouri since August 30, 2013. *Id.* ¶¶ 77-150.

In April 2019, the parties sought preliminary approval of a proposed class action settlement. Doc. #23. The Court granted the request and entered an order preliminarily approving the proposed class action settlement ("Preliminary Approval Order"). Doc. #27. Therein, the Court conditionally certified the Settlement Class as follows:

> All persons and other entities who purchased Super Tech 303 Tractor Hydraulic & Transmission Oil at Walmart Stores in Missouri at any point in time from August 30, 2013 to present, excluding those who purchased for resale. Also excluded from the Settlement Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

*Id.* at 2. In addition, the Preliminary Approval Order, *inter alia*, (1) found the Settlement Agreement and Release ("the Agreement") terms were fair, reasonable, and adequate; (2) concluded the requirements under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure were satisfied; (3) appointed class counsel, class representatives, and the Settlement Administrator; (4) determined the parties' proposed notice plan complied with Rule 23, was reasonable, and constituted due, adequate, and sufficient notice; (5) approved the method, manner, and timing of notice; (6) established the procedures for opting out and objecting to the settlement, and (7) scheduled a Final Approval Hearing. *Id.* at 2-10. In January 2020, Plaintiffs sought an extension of the claim filing deadline for Class Members and approval of a supplemental notice plan. Doc. #32. The Court granted the request. Doc. #33.

Now pending are Plaintiffs' unopposed motion for final approval of proposed class action settlement and Plaintiffs' application for attorneys' fees, expenses, and incentive awards. On March 3, 2020, the Court held the Final Approval Hearing, during which counsel for all parties appeared and provided information and legal arguments related to the pending motions. No opposition to either motion was filed, and the time for doing so has passed. L.R. 7.0(c)(1). The motions are now ripe for consideration.

## II. DISCUSSION

The Court will first address class certification and settlement approval Then, the Court will turn to the requests for incentive awards, attorneys' fees, and expenses.

### A. Class Certification

To grant final certification of this class action, the Court must find the putative class action meets the four requirements found in Rule 23(a) of the Federal Rules of Civil Procedure and fits within a category of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).

#### (1) Rule 23(a) Requirements

Pursuant to Rule 23(a), all class actions must establish (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613.

Numerosity is met when Plaintiffs demonstrate the class is so large that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1). The parties represent, and no one has disputed, there are between 1,000 and 2,000 Settlement Class members.[1] Doc. #36, at 5. Thus, the numerosity requirement has been satisfied.

Commonality is satisfied when a legal question "substantially related" to resolving the case links the class members. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Each Settlement Class member shares claims against Defendants for alleged Missouri Merchandising Practices Act violations, breach of warranty, fraudulent and negligent misrepresentations, negligence, and unjust enrichment arising out of the alleged purchase and use of Super Tech 303 Tractor Hydraulic & Transmission Oil, and they seek economic damages resulting from Defendants' alleged actions. If the matter was tried, the same evidence would support each class member's claims. Thus, the commonality requirement has been satisfied.

Typicality is "met so long as the other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. The named plaintiffs' claims are typical to

---

[1] The Agreement (Doc. #36-1) is incorporated by reference in this Order, and all capitalized terms in this Order shall have the meanings set forth in the Agreement.

the Settlement Class members' claims.  Plaintiffs' claims are identical to the Settlement Class members.  The Court finds the typicality requirement has been satisfied.

For adequacy of representation, class representatives must "fairly and adequately protect the interests of the class," have "common interests with the members of the class," and "vigorously prosecute the interests of the class through qualified counsel."  Fed. R. Civ. P. 23(a)(4); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982) (citation omitted).  Here, the class representatives allege the same claims and injuries as the absent Settlement Class members.  There is no evidence that the class representatives have conflicts of interest with the absent Settlement Class members or they were antagonistic toward the absent Settlement Class members.  Moreover, the class representatives, through class counsel, have vigorously prosecuted the class's interests.  Class counsel, who are experienced, competent, and highly qualified, fairly and adequately represented and protected the interests of the Settlement Class members.

Thus, the Court finds the class representatives and class counsel adequately represented the Settlement Class members.  The Court approves and appoints Arthur Famuliner and Russ Mapes as class representatives.  The Court approves and appoints Tom Bender, Dirk Hubbard, Gene Graham, William Carr, Bryan White, and Clayton Jones as class counsel.

For the foregoing reasons, the Court finds the Rule 23(a) requirements have been met.

### (2)     Rule 23(b) Requirement

Plaintiffs must also establish one of the subparts of Rule 23(b) is satisfied.  Rule 23(b)(3), on which Plaintiffs rely, is met if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court already concluded questions of law and fact are common among the Settlement Class members.  *See supra*, section II(A)(1).  The Court also finds these common questions of law and fact predominate over any questions affecting individual

Settlement Class members. Further, this class action is superior to other methods of litigating these claims (e.g., filing 1,000 or 2,000 lawsuits), and fairly and efficiently adjudicates the controversy. Thus, Rule 23(b)(3) is satisfied.

Based on the foregoing findings and pursuant to Rule 23, the Court finally certifies a class action on behalf of the following:

> All persons and other entities who purchased Super Tech 303 Tractor Hydraulic & Transmission Oil at Walmart Stores in Missouri at any point in time from August 30, 2013 to present, excluding those who purchased for resale. Also excluded from the Settlement Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

### B. Notice to Settlement Class Members

Rule 23(c)(2)(B) requires class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice…need only be as directed by the district court…and reasonable enough to satisfy due process." *DeBoer*, 64 F.3d at 1176.

In its Preliminary Approval Order, the Court prescribed the form, content, manner, and timing of notice to Settlement Class members. Doc. #27, at 4-7. Based on the parties' representations, the executed notice plan complied with the Court's Order. After Defendants identified the name, email address, and in most instances, mailing address of 147 Settlement Class members, that information was provided to the Settlement Administrator. Doc. #36-2, at 2.

In August 2019, the Settlement Administrator emailed notice to 147 Settlement Class members. *Id.* The email included the Summary Notice, along with links to the settlement website. *Id.* Of the emailed notices, seven were returned as undeliverable. *Id.* The Settlement Administrator was provided mailing addresses for six of the seven Settlement Class members and immediately mailed the Long Form Notice and Claim Form to each of these members. *Id.* at 2-3.

The Settlement Administrator caused the Summary Notice to be printed in twelve Missouri publications in August 2019. *Id.* at 3. It also established a website and

Facebook campaign.[2]  *Id.*  In October 2019, the Settlement Administrator mailed a cover letter and pre-populated Claim Form, along with a postage pre-paid return envelope to 118 Settlement Class members who had not already filed a Claim Form.  *Id.* at 4.

In January 2020, the Court, at the parties' request, extended the claims filing deadline to allow for an extended media campaign, which included the Summary Notice to be published again.  *Id.*  Also in January 2020, the Settlement Administrator mailed a cover letter and Claim Form to ninety Settlement Class members who had not yet filed a claim.  *Id.*  The letter provided the number of buckets the Settlement Class member purchased and advised them that a claim had been created for them and unless they had a change, there was no need to file a claim to receive a payment.  *Id.*  The Settlement Administrator also sent an email to the twenty-five Settlement Class members for whom it did not receive mailing addresses.  *Id.*  Summary Notice was printed in thirteen Missouri publications in January 2020.  *Id.* at 5.  It also arranged fifteen 30-second Radio Notices to run each week in the last two weeks of January on the Ag Radio Network.  Doc. #32-1, at 2.

A total of 194 claims were filed seeking awards for 1,513 buckets, for a total of $28,825 ($25 per bucket).  Doc. #36-2, at 6.  Those claimants also seek a total of $433,961.97 for repairs, parts, or other damage to equipment.  *Id.*  The Settlement Administrator rejected thirteen claims.  *Id.*  For the accepted claims, the Settlement Class members will receive a settlement distribution.  *Id.*  Regarding the rejected claims, the Settlement Administrator sent denial letters to the claimants stating they had twenty-one days to reply to the letter.  *Id.*  The Settlement Administrator did not receive any replies.  *Id.*

The Settlement Administrator has not received any objections to the settlement and no objections were filed with the Court.  *Id.*; Doc. #38.  Additionally, the Settlement

---

[2] The Settlement Administrator sent internet banner ad notices through Facebook, targeting persons in Missouri who have interests or job titles consistent with the demographics of a person who might purchase or have need to utilize tractor hydraulic fluid as part of their work.  Doc. #36-1, at 94.  The Facebook campaign reached approximately 870,000 to 2.4 million impressions.  *Id.*

Administrator has not received any requests to opt out of the settlement. Doc. #36-2, at 6.

Based on the foregoing, the Court finds the notice provided was reasonable; constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and met the requirements of due process and Rule 23. The Court also finds the manner of notice was the best practicable notice under the circumstances and was reasonably calculated to apprise Settlement Class members of this matter. Finally, the Court concludes individual notice was sent to all Settlement Class members who could be identified through reasonable efforts.

### C. Approval of Settlement

Now, the Court must determine whether it should approve the proposed class action settlement of $400,000. A "class may be settled…only with the court's approval." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (citing Fed. R. Civ. P. 23(e)). If the settlement binds the Settlement Class members, "the court may approve it only after a hearing and on finding that it is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Courts must "ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005) (citation omitted). To determining whether a settlement is fair, reasonable, and adequate, the Court considers (1) the merits of the plaintiffs' case weighed against the settlement terms; (2) Defendants' financial condition; (3) complexity and expense of further litigation; and (4) amount of opposition to the settlement. *Marshall*, 787 F.3d at 508 (citations omitted). "The single most important factor…is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (citation omitted).

### (1) Merits of Case and Terms of Settlement

Plaintiffs recognize the risks and uncertainty of litigation. While confident they would have prevailed at trial, Plaintiffs concede there is a risk of not recovering any monetary relief, particularly in light of Defendants' "several strong defenses" if the litigation were to continue. Doc. #37, at 10. But, with the settlement, 181 Settlement

7
Case 4:19-cv-00060-ODS    Document 40    Filed 03/03/20    Page 7 of 12

Class members receive immediate relief in the form of a payment equal to seventy percent of the estimated price paid for Super Tech 303. *Id.* at 12. Settlement Class members will also receive significant monies for repairs, parts, and equipment damage that resulted from use of the Super Tech 303. *Id.* If litigation continued, monetary relief, if obtained, would not be realized for several years. Additionally, Defendants agreed to pay class counsel's fees and expenses and the class representatives' incentive awards. Doc. #29, at 1. These amounts will not reduce the Class Settlement Fund.

### (2) Defendants' Financial Condition

There is no indication that Defendants' financial conditions are such that they are unable to pay any judgment entered in this case.

### (3) Complexity and Expense of Further Litigation

The parties admit future proceedings "would be protracted and expensive, involve highly complex legal and factual issues" including liability and damages and "would involve substantial uncertainties, delays, and other risks inherent in litigation." Doc. #37, at 14. Given the claims, class size, and the factual and legal questions, the Court agrees with the parties' assessment.

### (4) Opposition to Settlement

There are estimated to be 1,000 to 2,000 Settlement Class members. To date, no objections or opt outs have been received or filed. Doc. #37, at 14; Doc. #36-2, at 6; Doc. #38-2.

Based on the foregoing, the Court finds the Agreement (Doc. #36-1) was reached following meaningful discovery and investigation conducted by class counsel in good faith and as a result of arm's length negotiations between the parties. The Court finds the parties' settlement is fair, reasonable, and adequate, and in the best interests of the parties and the Settlement Class members when balanced against the risks and benefits of further litigation. The Court approves the parties' settlement.

### D. Application for Class Representatives' Incentive Awards

Plaintiffs seek approval of $2,500 incentive awards to each of the two class representatives: Arthur Famuliner and Russ Mapes. Doc. #28, at 2; Doc. #29, at 1-3. According to Plaintiffs, the class representatives "spent a substantial amount of time in meeting and talking with Class Counsel, assisting in development of the case, reviewing pleadings, and gathering documents and information." Doc. #29, at 3. Additionally, the class representatives participated in mediation and were prepared for their depositions. Doc. #29-1, at 1. These service awards will be paid separately by Defendants and will not be deducted from the Class Settlement Fund. Doc. #28, at 2; Doc. #29, at 3. No one objected to Plaintiffs' application for incentive awards.

The Eighth Circuit, this Court, and other courts have determined class representative service awards and the amount requested by Plaintiffs are appropriate. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (finding $2,000 class representative awards were appropriate); *Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 220 (W.D. Mo. 2017) (awarding $2,500 to each class representative); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (awarding $5,000 to class representatives). The Court finds Plaintiffs' request is reasonable and approves incentive award payments in the amount of $2,500 to each class representative with Defendants directly paying the incentive awards to the class representatives.

### E. Application for Attorneys' Fees and Costs

Class counsel asks the Court to award attorneys' fees in the amount of $132,000. Doc. #28, at 2; Doc. #29, at 4. When certifying a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court finds an award of attorneys' fees is authorized by Rule 23(h). Two methods are used to award attorneys' fees: the lodestar method and the percentage of the benefit method. *Galloway v. The Kan. City Landsmen, LLC*, 833 F.3d 969, 972 (8th Cir. 2016). The Court may choose what method to apply. *Id.* (citation omitted). Class counsel maintains the requested fees are fair and reasonable under either method but suggests the percentage of the benefit approach is appropriate.

Under the "percentage of the benefit" method, the attorneys are awarded "some fraction of the common fund" the attorneys obtained in the litigation, similar to a contingent fee arrangement. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). To determine the reasonableness of a fee award, courts consider several factors including but not limited to time and labor required; novelty and difficulty of legal questions; degree of success or results obtained; required skill to handle the case; whether the fee is fixed or contingent; experience, reputation, and ability of the attorneys; and awards in similar cases. *See Keli v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (citations omitted); *Phillips v. Mo.*, No. 97-CV-748, 2000 WL 33910092, at *1 (W.D. Mo. Mar. 29, 2000) (citations omitted).

Class counsel spent more than 300 attorney hours, 100 paralegal/assistant hours, and "hundreds of hours" investigating the industry as a whole. Doc. #29, at 6; Doc. #29-1, at 3. The time was spent investigating facts, conducting legal research, reviewing documents, drafting pleadings, conducting discovery, preparing for depositions, communicating with opposing counsel, requesting information from third parties, meeting with class representatives, meeting with Defendants' counsel, retaining and consulting with experts, and mediating. Doc. #29-1, at 3.

Because of the settlement, 181 purchasers of the product at issue will benefit. Doc. #36-2, at 6. Approximately $330,000 of the $400,000 Class Settlement Fund will be distributed to Settlement Class members. Doc. #36, at 5.[3] Each Settlement Class member who submitted valid claims will receive 100% return of the price paid for the Super Tech 303. *Id.* Each Settlement Class member also has the opportunity for an award of additional relief, paid at a pro rata amount of 71.23% each, for any repairs, parts, or specific damage to the equipment related to use of the product. Doc. #36-2, at 6. Thus, class counsel obtained a concrete and substantial benefit for Settlement Class members.

Pursuant to the Agreement, $20,000 of the remaining $70,000 will paid to the Settlement Administrator for reimbursement of reasonable costs, fees, and expenses,

---

[3] Pursuant to the Agreement, any money remaining in the Class Settlement Fund after final distribution will be paid to the parties' designated *cy pres* recipient (Legal Aid of Western Missouri). Doc. #36-1, at 28.

including any tax-related expenses. *Id.* The remaining $50,000 will pay for the costs associated with the Additional Published Notice Plan. *Id.*

Also, the parties negotiated and proposed a fair, reasonable, and adequate settlement. Doc. #36-1, at 13. The fee award was negotiated by attorneys experienced and knowledgeable in these types of matters. *Id.* Defendants agreed to directly pay class counsel's fees, and that amount will not reduce any benefit to Settlement Class members. *Id.*

Class counsel's fees in the amount of $132,000 equate to thirty-three percent of the Class Settlement Fund and are characteristic of other fee awards in similar class actions. *See*, *e.g.*, *Huyer*, 314 F.R.D. at 629 (finding the district court did not abuse its discretion in awarding attorneys' fees equivalent to one-third of the settlement fund); *In re U.S. Bancorp Litigation*, 291 F.3d 1035, 1038 (8th Cir. 2002) (concluding that a district court's attorney fee award of 36% of a class action settlement fund was not an abuse of discretion); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017) (affirming fee award that represented one-third of the total settlement fund in class action). For the foregoing reasons, the Court approves Plaintiffs' request for attorneys' fees in the amount of $132,000, which will be paid directly by Defendants. Pursuant to the Agreement, class counsel's expenses shall be reimbursed out of the $132,000 award for attorneys' fees. Doc. #36-1, at 13.

### III.  CONCLUSION

For the foregoing reasons, the Court finds and orders the following:

(1)  Plaintiffs' Unopposed Motion for Final Settlement Approval (Doc. #36) is granted.

(2)  The Court approves the parties' settlement in the amount of $400,000.

(3)  Plaintiffs Arthur Famuliner and Russ Mapes are appointed as class representatives, and Plaintiffs' request for a $2,500 incentive award for each class representative is granted. The incentive awards will be paid by Defendants, and incentive awards will not be paid from the Class Settlement Fund.

(4)  Tom Bender, Dirk Hubbard, Gene Graham, William Carr, Bryan White, and Clayton Jones are appointed as class counsel.

(5) Class counsel's application for $132,000 in attorneys' fees, out of which expenses shall be reimbursed, is granted. The attorneys' fees will be paid by Defendants, and the fees will not be paid from the Class Settlement Fund.

(6) Pursuant to the Agreement, money remaining in the Class Settlement Fund after final distribution will be paid to the parties' designated *cy pres* recipient, Legal Aid of Western Missouri.

(7) The parties are directed to consummate the Agreement.

(8) Upon the Effective Date, the Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class members.

(9) The Agreement is binding on all parties and Settlement Class members.

(10) Pursuant to the Agreement, the Court retains jurisdiction over the parties, including all Settlement Class members, as well as matters regarding interpretation, administration, implementation, effectuation, and enforcement of the Agreement.

(11) Pursuant to the Agreement, this matter is dismissed with prejudice.

IT IS SO ORDERED.

DATE: March 3, 2020

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT